IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

APRIL MALONE and                    )
CELITRIA WATSON,                    )
                                    )
        Plaintiffs,                 )
                                    )
v.                                  )   No. 18-cv-2201-MSN-tmp
                                    )
SHELBY COUNTY; PAUL HAGERMAN,       )
Assistant District Attorney,        )
Individually and in his             )
Official Capacity;                  )
AUSTIN SCHOLEFIELD,                 )
Individually and in his             )
Official Capacity;                  )
CHRIS SCRUGGS, Individually         )
and in his Official Capacity;       )
CITY OF MEMPHIS;                    )
OFFICER THURMOND RICHARDSON,        )
Individually and in his             )
Official Capacity;                  )
OFFICER JONATHAN OVERLY,            )
Individually and in his             )
Official Capacity; and              )
OFFICER WILLIAM ACRED,              )
Individually and in his             )
Official Capacity,                  )
                                    )
        Defendants.                 )

---

## REPORT AND RECOMMENDATION

---

Before the court is defendant City of Memphis's (the "City") Motion to Dismiss for Failure to State a Claim. (ECF No. 50.) Plaintiffs April Malone and Celitria Watson responded in opposition. (ECF No. 55.) Pursuant to Administrative Order

No. 2013-05, this case has been referred to the United States
magistrate judge for management and for all pretrial matters for
determination or report and recommendation, as appropriate. For
the following reasons, the undersigned recommends that the
City's motion be granted.

### I.    PROPOSED FINDINGS OF FACT

Plaintiffs' *pro se* complaint, filed on March 23, 2018,
alleges that at some time prior to January 21, 2017, their cell
phones were the subject of a wiretap requested by Assistant
District Attorneys Paul Hagerman, Austin Scholefield and Chris
Scruggs. (ECF No. 1 at 3.) Plaintiffs state that the wiretap
was premised on information provided by Memphis Police Officers
Thurmond Richardson, Jonathan Overly, and William Acred, that
the information was "created, fabricated and/or altered" by
these defendants, and that the information was used to secure
text messages from plaintiffs' cell phones and then the text
messages were altered or fabricated in order to make it appear
that plaintiffs were involved in criminal activity. (Id.)
Plaintiffs assert that on this basis, they were indicted on
January 31, 2017. After attending multiple court appearances,
plaintiffs were able to obtain the original text messages from
their cell phone providers. (Id.) Plaintiffs identified

- 2 -

"several discrepancies in the messages and the dates and times sent" and as a result, the criminal charges against them were ultimately dismissed.  (Id. at 3-4.)  Plaintiffs bring claims under the Tennessee Governmental Tort Liability Act ("TGTLA"), 42 U.S.C. § 1983, the Tennessee Human Rights Act ("THRA"), and for fraudulent misrepresentation, negligence, malicious prosecution, false arrest and imprisonment, and intentional and negligent infliction of emotional distress.  (Id. at 4-10.)

As to the City, plaintiffs allege municipal liability premised on a failure to provide adequate training or supervision to its police officer employees and a failure to take remedial action despite the City's knowledge that its employees had alleged deficiencies and that such deficiencies proximately caused plaintiffs' injuries.  (Id. at 4-5; 7-8.) Plaintiffs also assert the City is vicariously liable for the actions of its officers in effecting the false arrest and false imprisonment, and appear to assert the City is liable for intentional and negligent infliction of emotional distress. (Id. at 10.)  Plaintiffs seek compensatory and punitive damages. (Id. at 11.)

## II.   PROPOSED CONCLUSIONS OF LAW

**A.    Standard of Review**

To avoid dismissal for failure to state a claim, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Hill v. Lappin, 630 F.3d 468, 470-71 (6th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)); see also Fed. R. Civ. P. 12(b)(6). "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Ctr. for Bio-Ethical Reform, Inc. v. Napolitano, 648 F.3d 365, 369 (6th Cir. 2011) (quoting Iqbal, 556 U.S. at 678). Without factual allegations in support, mere legal conclusions are not entitled to the assumption of truth. Iqbal, 556 U.S. at 679.

Pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers and are thus liberally construed. Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011). Even so, pro se litigants must adhere to the Federal Rules of Civil Procedure, see Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989), and the court cannot create a claim that has not been spelled out in a pleading. See Brown v. Matauszak, 415 F. App'x 608, 613 (6th Cir. 2011); Payne v. Sec'y of Treas., 73 F. App'x 836, 837 (6th Cir. 2003).

- 4 -

The City argues: (1) plaintiffs' TGTLA and § 1983 claims are time-barred; (2) plaintiffs fail to state a claim under § 1983 because their allegations that a policy or custom is responsible for their alleged constitutional violations is conclusory; (3) it is immune from plaintiffs' TGTLA claims and, even if it is not, such claims are insufficient to establish a cause of action for negligent training or supervision; (4) plaintiffs' THRA claims are without merit because plaintiffs are not employees of the City; (5) plaintiffs fail to articulate the necessary components of a common law negligence claim; (6) any common law tort claims should be dismissed due to immunity under the TGTLA; (7) the court should decline to exercise supplemental jurisdiction over any state law claims; and (8) the City cannot be held liable for punitive damages. The court will address each argument in turn below.

## B. Timeliness of TGTLA and § 1983 Claims

Claims brought under the TGTLA "must be commenced within twelve (12) months after the cause of action arises." Tenn. Code Ann. § 29-20-305(b); see also Buckner v. City of Memphis, No. 2:16-cv-2037-JTF-dkv, 2017 WL 607581, at *2 (W.D. Tenn. Feb. 15, 2017). A one-year statute of limitations also applies to § 1983 claims. See Thomas v. Copeland, Nos. 18-5006/5044, 2018 WL

6566865, at *3 (6th Cir. Dec. 12, 2018).  "[A] cause of action 'arises' under the GTLA when the plaintiff discovers, or in the exercise of reasonable care should have discovered, that he or she sustained an injury as a result of the defendant's wrongful conduct."  Sutton v. Barnes, 78 S.W.3d 908, 916 (Tenn. Ct. App. 2002) (citing Shadrick v. Coker, 963 S.W.2d 726, 733 (Tenn. 1998)).  Similarly, under § 1983, "[t]he statute of limitations begins to run 'when the plaintiff knows or has reason to know of the injury which is the basis of his action.'"  Thomas, 2018 WL 6566865, at *3 (quoting Sevier v. Turner, 742 F.2d 262, 273 (6th Cir. 1984)).

Plaintiffs' complaint states the alleged wrongful indictment was secured on January 31, 2017.  (ECF No. 1 at 4.) While the complaint lacks additional details describing when plaintiffs discovered (or reasonably should have discovered) that the indictment was a result of wrongful conduct, it does state that only after securing the original text messages from their cell phone providers were plaintiffs able to "reveal several discrepancies in the messages and the dates and times sent" which, plaintiffs assert, resulted in dismissal of their criminal charges.  (ECF No. 1 at 3.)  The response brief indicates plaintiffs' case was not dismissed until August 2017,

- 6 -

at which time they became aware of their injury. (ECF No. 55 at
2-3.) The cause of action here could have potentially arisen as
late as that discovery, because only then would plaintiffs have
reason to know that their injury was sustained "as a result of
the defendant's wrongful conduct." See Sutton, 78 S.W.3d at
916; see also Sam v. Sheriff's Office, St. Martin Parish, No.
6:12-cv-2825, 2013 WL 1289999, *2 (W.D. La. Feb. 25, 2013)
(stating plaintiff's false arrest occurred, at the latest, when
her charges were dismissed), report and recommendation adopted
at 2013 WL 1289162 (W.D. La. Mar. 27, 2013). Because it is
unclear when such discovery occurred, it would be premature at
this time to conclude that plaintiffs' cause of action under
either the TGTLA or § 1983 is untimely. Construing the
complaint in the light most favorable to plaintiffs, the court
declines to find plaintiffs' claims are time-barred at this
early stage of the proceedings.

**C.  Failure to State a Claim Under 42 U.S.C. § 1983**

"A municipality cannot be held liable under § 1983 on a
respondeat superior basis." Mhoon v. Metro. Gov't of Nashville
& Davidson Cty., Tennessee, No. 3:16-cv-01751, 2016 WL 6250379,
at *6 (M.D. Tenn. Oct. 26, 2016) (citing Thomas v. City of
Chattanooga, 398 F.3d 426, 432-33 (6th Cir. 2005)). Rather,

- 7 -

municipal liability under § 1983 arises "'when execution of a
government's policy or custom[] . . . inflicts the injury' of a
constitutional violation." David v. City of Bellevue, Ohio, 706
F. App'x 847, 850 (6th Cir. 2017) (quoting Monell v. Dep't of
Soc. Servs., 436 U.S. 658, 694 (1978)). A plaintiff may
establish municipal liability through any of several theories:
"(1) the existence of an illegal policy or legislative
enactment; (2) that an official [with] final decision making
authority ratified illegal actions; (3) the existence of a
policy of inadequate training or supervision; or (4) the
existence of a custom of tolerance or acquiescence in federal
rights violations." Stewart v. City of Memphis, No. 2:16-cv-
02574-SHM, 2019 WL 332812, at *12 (W.D. Tenn. Jan. 25, 2019)
(citing Burgess v. Fischer, 735 F.3d 462, 478 (6th Cir. 2013)).
"In the context of [§] 1983 municipal liability, district courts
in the Sixth Circuit have interpreted Iqbal's standards
strictly." Epperson v. City of Humboldt, Tenn., 140 F. Supp. 3d
676, 685 (W.D. Tenn. 2015) (quoting Hutchison v. Metro. Gov't of
Nashville & Davidson Cty., 685 F. Supp. 2d 747, 751 (M.D. Tenn.
2010)); see also Horn v. City of Covington, No. 14-73-DLB-CJS,
2015 WL 4042154, at *4 (E.D. Ky. July 1, 2015); Sweat v. Butler,
90 F. Supp. 3d 773, 778 n.1 (W.D. Tenn. 2015). A mere

- 8 -

"'formulaic recitation of the elements of a cause of action'" is insufficient to state a claim upon which relief can be granted. Birgs, 686 F. Supp. 2d at 780 (quoting Twombly, 550 U.S. at 555); see also Jones v. Couvreur, No. 17-CV-11185, 2017 WL 1543703, at *4 (E.D. Mich. Apr. 28, 2017) (dismissing complaint that relied on "mere boilerplate language" to suggest municipality liable under failure to train theory).

Plaintiffs allege the City violated § 1983 because it "failed to provide adequate training or supervision for the police officers and that their failure to train and supervise their officers has become a custom that has resulted in substantiated excessive abuse claims" against the City, and the City "was aware that the officers involved had deficiencies, which would lead to the type of injuries which the Plaintiffs suffered. However, the City . . . failed to take remedial action and provide adequate training, supervision or discipline for the police officers," which proximately caused plaintiffs' injuries. (ECF No. 1 at 4-5; 7-8.) Thus, plaintiffs' theories of liability appear to be premised on the City's alleged (1) policy of inadequate training or supervision and (2) custom of tolerance or acquiescence of federal rights violations. See Stewart, 2019 WL 332812, at *12.

- 9 -

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick v. Thompson, 563 U.S. 51, 60 (2011). To establish municipal liability on this basis, a plaintiff must show "'(1) the training program was inadequate to the task the officer must perform, (2) the inadequacy is a result of the municipality's deliberate indifference, and (3) the inadequacy is closely related to or actually caused the plaintiff's injury.'" Epperson, 140 F. Supp. at 684 (quoting Bonner-Turner v. City of Ecorse, 627 F. App'x 400, 414 (6th Cir. 2015)). Deliberate indifference requires a showing of "prior instances of unconstitutional conduct demonstrating that the municipality has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." Id. (quoting Plinton v. County of Summit, 540 F.3d 459, 464 (6th Cir. 2008)); see also Birgs v. City of Memphis, 686 F. Supp. 2d 776, 780 (W.D. Tenn. 2010). "The easiest way for an individual to meet this burden is to point to past incidents of similar police conduct that authorities ignored." Birgs, 686 F. Supp. 2d at 780; see also Miller v. Calhoun County, 408 F.3d 803, 816 (6th Cir. 2005). "A single constitutional violation may trigger liability if it is

- 10 -

'accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation[.]'" Epperson, 140 F. Supp. 3d at 685 (quoting Bonner-Turner, 627 F. App'x at 414). "For liability to attach under this circumstance, 'the record must show a complete failure to train the police force, training that is so reckless or grossly negligent that future police misconduct is almost inevitable or would properly be characterized as substantially certain to result.'" Id. (citing Harvey v. Campbell Cty., Tenn., 453 F. App'x 557, 567 (6th Cir. 2011). That is, "if the need for more or different training is so obvious that the [municipality] is shown to have been deliberately indifferent to the need, then the [entity] may be deemed to have had a policy of deliberate indifference." Id. at 563 (internal quotations omitted). "However, mere allegations that an officer was improperly trained or that an injury could have been avoided with better training are insufficient to make out deliberate indifference." Id. (internal quotations omitted).

Where a plaintiff asserts a claim of a custom of tolerance toward constitutional violations, i.e., a custom of inaction, she must show "(1) a clear and persistent pattern of misconduct, (2) notice or constructive notice on the part of the

- 11 -

municipality, (3) the defendant's tacit approval of the
misconduct, and (4) a direct causal link to the violations."
Nouri v. County of Oakland, 615 F. App'x 291, 296 (6th Cir.
2015) (internal quotation marks omitted); see also Burgess, 735
F.3d at 478 ("a custom-of-tolerance claim requires a showing
that there was a pattern of inadequately investigating similar
claims"). The Sixth Circuit has "never found notice of a
pattern of misconduct (or the pattern itself) solely from the
mistreatment of the plaintiff." Nouri, 615 F. App'x at 296.
Relying solely upon his or her own experience is thus
insufficient to state a claim against the municipality. Id.;
see also Epperson, 140 F. Supp. 3d at 685. A claim based on a
custom of tolerance likewise requires a showing of deliberate
indifference. Id. (citing Key v. Shelby County, 551 F. App'x
262, 267 (6th Cir. 2014); D'Ambrosio v. Marino, 747 F.3d 378,
387–88 (6th Cir. 2014)).

The Sixth Circuit has routinely found that conclusory,
speculative allegations are insufficient to state a plausible
claim for relief against a municipality under either theory. In
Brent v. Wayne Cty. Dep't of Human Servs., 901 F.3d 656 (6th
Cir. 2018), the court determined that plaintiffs' complaint was
properly dismissed where it failed to "allege a single fact that

- 12 -

suggests, plausibly or otherwise, that the Detroit Police
Officers' purported Fourth Amendment violations were the result
of a custom, policy, or practice of" the City of Detroit. Id.
at 698 (internal quotations omitted). The court noted that
plaintiffs' later filings indicated "the Detroit Police
Department was under a consent order to cure the very Fourth
Amendment violations that occurred and was therefore well aware
that constitutional violations were occurring on a regular
bas[i]s but nevertheless "took no steps whatsoever to attempt to
cure these issues." Id. (internal quotations omitted). While
the appellate court determined that the district court properly
declined to consider these allegations because they were
contained in a response to a motion for judgment on the
pleadings instead of the complaint, the panel still
characterized them as "vague," suggesting that even adding such
factual allegations would have been insufficient to state a
plausible claim for relief. Id. Likewise, in Bickerstaff v.
Lucarelli, 830 F.3d 388 (6th Cir. 2016), the court affirmed
dismissal of a complaint because its "speculative allegations
fall short of stating a claim against the City." Id. at 402.
Specifically, the court noted that:

> Beyond the blanket assertions that the City
> "condon[ed]" or "tolerat[ed]" police officer

> misconduct, she points to no facts that would indicate
> the existence of such an official policy or custom.
> Nor does Bickerstaff put forth any facts suggesting
> that the City ignored a "clear and persistent pattern"
> of misconduct. [] With no factual allegations showing
> a formal policy or any prior incidents to support the
> City of Cleveland's adoption of such an informal
> practice or custom, Bickerstaff's Monell municipal-
> liability claim accordingly fails.

Id.  In D'Ambrosio, 747 F.3d 387-88, the plaintiff argued on appeal that his complaint stated a claim for municipal liability premised on county prosecutors' "habitually ignor[ing] criminal defendants' constitutional rights in a manner that was so persistent and widespread as to practically have the force of law." (Internal quotations omitted.)  In other words, he argued prosecutors were acting in "accordance with a preexisting and ubiquitous county practice that can fairly be deemed to have originated with or at some point been adopted by the municipality."  Id. at 387.  The court rejected this argument because the thrust of plaintiffs' complaint was that at most two or three members of the prosecutor's office instigated and implemented habitually unconstitutional practices, not that they were following municipal policy in doing so, and because the complaint contained no allegations that the practice at issue there was acquiesced to or informed by municipal actors as opposed to prosecutors who had adopted the strategy to win

- 14 -

criminal convictions. Id. The court also considered the plaintiff's allegations in the context of a "custom of inaction" claim, but again noted that the complaint, while dedicating significant time to the wrongs of the prosecutors, failed to adequately connect this misconduct to the municipality or sufficiently allege that the municipality should have been aware of wrongdoing, which consisted of three specific instances of improper comments at trial over two decades. Id.; see also Gonzalez v. Kovacs, 687 F. App'x 466, 470 (6th Cir. 2017) ("But Gonzalez's complaint alleges not a single fact that suggest, plausibly or otherwise, that Kovac's alleged misconduct was the result of a custom, policy, or practice of Lorain County."); Holland v. County of Macomb, No. 16-2103, 2017 WL 3391653, at *3 (6th Cir. Mar. 17, 2017) (affirming dismissal of complaint where plaintiff did not point to a policy or custom of municipality that was the source of the alleged violations and did not point to prior instances of misconduct that would have put municipality on clear notice that its training policies were deficient); Nouri, 615 F. App'x 291, 296 (6th Cir. 2015) (affirming dismissal of a custom of inaction claim where the complaint "simply [did] not set forth any facts that suggest the Sheriff or County had notice of recurring violations, or even

the mistreatment of [the plaintiff] himself"); <u>Epperson</u>, 140 F. Supp. 3d at 686 (finding failure to state a claim for municipal liability because complaint did not offer "well-pleaded facts to support the legal conclusion that the City was on notice of a pattern or practice of unconstitutional uses of forces by officers in its employ against mentally impaired persons . . . or that it had a custom of ignoring violations or failing to discipline officers who engaged in such behavior"); <u>Birgs</u>, 686 F. Supp. 2d at 780 (finding failure to state a claim where complaint's allegations amounted to "nothing more than the formulaic recitation of the elements of a cause of action").

By contrast, in cases where the Sixth Circuit has found that complaints satisfied the plausibility requirement, those complaints contained at least some details as to the custom or practice challenged and identified specific instances of similar past conduct. For example, in <u>Osberry v. Slusher</u>, No. 17-4242, 2018 WL 4360979 (6th Cir. Sept. 13, 2018), the Sixth Circuit considered whether the district court properly found a plaintiff stated a claim where the complaint alleged that officers used the same unlawful tactics as were used in six specific cases over a five-year period. <u>Id.</u> at *10. Even though the defendants conceded this was enough to state a claim under the

- 16 -

failure to train theory of municipal liability, the court still
noted it was a "close call" and expressed "skepticism" in
affirming. Id. The court also considered whether the plaintiff
stated a claim for "the classic Monell case that an illegal,
official policy existed." Id. Again commenting that it was a
"close call," the court found that the "more detailed
allegations" of six cases over a five-year period where officers
allegedly employed unlawful tactics "nudge[d] Osberry's Monell
claim 'across the line from conceivable to plausible.'" Id. at
*11 (quoting Iqbal, 556 U.S. at 680). Similarly, in Guba v.
Huron County, 600 F. App'x 374, 385 (6th Cir. 2015), the
plaintiffs sought to hold Huron County liable under a theory of
municipal liability for failing to train its employees charged
with administering state laws governing the collection and
remittance of child-support payments. Id. at 384-85.
Plaintiffs' claims stemmed from the county's failure to enforce
an order from its Court of Common Pleas directing it to
discharge child-support orders originally entered in Michigan.
Id. at 376. The Sixth Circuit found that, at the pleading
stage, alleging "[s]ix years of repeated failure to comply with
the Common Pleas Court's requirements for the registering of the
foreign support order is enough to raise the likelihood that the

- 17 -

county's inadequate training of the support agencies' employees caused the violation of Plaintiffs' constitutional rights." Id. at 385. In Green v. Metro. Gov't of Nashville & Davidson Cty., 482 F. App'x 63 (6th Cir. 2012), the district court dismissed plaintiff's complaint for failure to allege a municipal custom or policy that was the moving force behind a constitutional violation – specifically, violations of the Fourth, Fifth, and Fourteenth Amendments for defects in a levy and execution sale in Tennessee state court. Id. at 64. The Sixth Circuit reversed, finding that plaintiff sufficiently stated a claim for municipal liability where he alleged defects, identified specific conversations his attorney conducted with Sheriff's Office employees regarding those defects, and alleged that each employee advised that "it was the custom, practice and policy of the Davidson County Sheriff's Department to not exercise independent judgment to correct, modify, or review any Levy issued by a court regardless of whether it was facially invalid." Id. at 66 (internal quotations omitted); see also Stewart v. City of Memphis, 2:16-cv-02574-STA-dkv, 2017 WL 627467, at *7 (W.D. Tenn. Feb. 15, 2017) (finding complaint stated plausible claim for municipal liability where it provided factual allegations regarding the City's alleged failure to

- 18 -

properly investigate the officer conduct at issue, identified the specific policy and custom complained of - officers failing to call for back-up and receiving coded radio transmissions in the presence of citizens not yet under arrest - and specifically alleged a causal link between the alleged constitutional deprivation and the injury complained of).

With the above principles in mind, the court now turns to the complaint in the instant case. The court finds that the complaint contains little beyond a formulaic recitation of the elements of a cause of action. See Birgs, 686 F. Supp. 2d at 780. It only offers the legal conclusion that the City's "failure to train and supervise their officers has become a custom that has resulted in repeated substantiated excessive abuse claims" against the City. (ECF No. 1 at 5.) The complaint contains no facts that could plausibly lead one to believe that the City deliberately ignored a history of abuse by officers in the Memphis Police Department. See Birgs, 686 F. Supp. 2d at 780; see also Brent, 901 F.3d at 698; Bickerstaff, 830 F.3d at 402; D'Ambrosio, 747 F.3d at 387. It does not allude to any past similar incidents, beyond mere conclusory statements. Compare Epperson, 140 F. Supp. 3d at 686 and Birgs, 686 F. Supp. 2d at 780 with Stewart, 2017 WL 627467, at *7

- 19 -

(denying Rule 12(b)(6) motion where complaint identified a specific policy or custom, and contained specific instances of past violations, beyond the instance complained of); _see also Osberry_, 2018 WL 4360979, at *10 (finding detailed allegations of six cases over a five-year period where officers allegedly employed unlawful tactics enough to state claim); _Guba_, 600 F. App'x at 385 (finding allegations of six years of repeated failure to comply with court order sufficient to raise the likelihood that the county's inadequate training of the support agencies' employees caused the violation of plaintiffs' constitutional rights); _Green_, 482 F. App'x at 66 (finding complaint stated plausible claim where it alleged specific conversations between attorney and municipal employees identifying alleged defective custom and policies).  Nor is there any indication of a "recurring situation[] presenting an obvious potential for such a violation'" beyond plaintiffs' own alleged injuries.  _See_ _Epperson_, 140 F. Supp. 3d at 686. Plaintiffs' complaint thus lacks "'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face'" under § 1983.  _See_ _Hill_, 630 F.3d at 470-71 (quoting _Iqbal_, 556 U.S. at 678).  The City's motion should be

- 20 -

granted on this ground, and any § 1983 claims against it
dismissed.

## D.   Failure to State a Claim Under the TGLTA

The TGTLA codifies Tennessee's common law rule of sovereign
immunity for counties, municipalities, and other governmental
entities and thus governs the City's liability for torts
committed by its employees and agents. Tenn. Code Ann. § 29-20-
201; Limbaugh v. Coffee Medical Ctr., 59 S.W.3d 73, 79 (Tenn.
2001). Under the TGTLA, a governmental entity (such as the
City) is generally subject to suit for civil claims sounding in
negligence with certain enumerated exceptions, including any
injuries that may arise out of an allegation of, *inter alia*,
false imprisonment pursuant to a mittimus from a court, false
arrest, malicious prosecution, or civil rights violations.
Tenn. Code Ann. § 29-20-205(2). "It is well-settled that the
GTLA's 'civil rights' exception includes claims arising under §
1983, and a plaintiff cannot circumvent a defendant's immunity
by couching its civil rights claim as one of negligence."
Tinkle v. Dyer Cty., Tennessee, No. 18-01124-STA-egb, 2018 WL
6840155, at *2 (W.D. Tenn. Dec. 31, 2018).

Plaintiffs allege the City was negligent for failing to
"provide adequate training or supervision" to the officers, that

- 21 -

this failure was a "custom that has resulted in repeated substantiated excessive abuse claims against the City," that the City was aware that the officers were deficient, and that this deficiency would lead to the type of injuries suffered. (ECF No. 1 at 7-8.) This negligence claim is comprised of the exact same facts and circumstances as the § 1983 claim. Accordingly, the City is exempt from plaintiffs' civil rights claims that they attempt to couch as negligence claims. See Tinkle, 2018 WL 6840155, at *2 (noting that "if a plaintiff alleges that a defendant violated his civil rights, he cannot alternatively bring a claim under the GTLA because to do so would violate the GTLA's preservation of immunity for alleged civil rights violations"); see also Doe v. Jackson Madison Cty. Bd. of Educ., 2018 WL 2927777 at *3 (W.D. Tenn. June 7, 2018); Stewart, 2017 WL 627467 at *8; Hargrow v. Shelby County, 2014 WL 3891811 at *5 (W.D. Tenn. Aug. 7, 2014). Furthermore, where plaintiffs' claims are premised on negligent training or supervision, the City would be immune from suit under the discretionary function exception to the TGTLA. See Tenn. Code Ann. § 29-20-205(1); see also Savage v. City of Memphis, 620 F. App'x 425, 429 (6th Cir. 2015); Tinkle, 2018 WL 6840155, at *2; Uhuru v. City of Memphis, 2008 WL 4646156 at *12 (W.D. Tenn. Oct. 17, 2008). The City is

likewise immune from suits premised on false imprisonment or false arrest; plaintiffs' allegations attempting to hold the City vicariously liable for this conduct must also be dismissed. See Tenn. Code. Ann. § 29-20-205(2); Jones v. Yancy, No. 07-2263, 2010 WL 625392, at *4 (W.D. Tenn. Feb. 17, 2010).  To the extent that plaintiffs intend to assert intentional or negligent infliction of emotional distress claims against the City, such claims would both arise from the same conduct as the § 1983 claims and be premised upon a false arrest or imprisonment, for which the City would likewise be immune.  Reading the complaint in the light most favorable to plaintiffs, the court cannot identify any other plausible claim against the City for which the TGTLA exemptions would not apply.  Plaintiffs have therefore failed to state a plausible claim against the City under the TGTLA.

**E.   Failure to State a Claim Under the THRA**

The THRA defines and prohibits discriminatory conduct in the employment context.  See Tenn. Code. Ann. § 4-21-401; see generally Ferguson v. Middle Tenn. State Univ., 451 S.W.3d 375, 380-81 (Tenn. 2014); Schede v. Anthony & Gordon Constr. Co., Inc., No. E2016-02318-COA-R3-CV, 2018 WL 1640069, at *2-3 (Tenn. Ct. App. Apr. 5, 2018).  Plaintiffs do not allege, nor is there

- 23 -

any indication in the complaint, that they are or were employed
by the City.  Accordingly, they have failed to state a claim for
relief under the THRA.

**F.   Supplemental Jurisdiction and Punitive Damages**

Construing the complaint in the light most favorable to
plaintiffs, the court finds that no plausible claims against the
City exist, and therefore, the court need not consider the
City's argument as to supplemental jurisdiction.  To the extent
that plaintiffs seek punitive damages against the City, such
damages are foreclosed by state law.  Johnson v. Smith, 621
S.W.2d 570, 572 (Tenn. Ct. App. 1981) ("Under the [TGTLA],
punitive damages are not recoverable from either the
governmental entity or the employee in an action arising from
the negligence of the employee.").

**III. RECOMMENDATION**

For the above reasons, the undersigned recommends that the
City's Motion to Dismiss be granted.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

February 21, 2019
Date

- 24 -

NOTICE

WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.